**KAUFMAN DOLOWICH VOLUCK**
ATTORNEYS AT LAW

*Matthew Cohen, Esq.*
mcohen@kdvlaw.com

Kaufman Dolowich & Voluck, LLP
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797

Telephone: 516.681.1100
Facsimile: 516.681.1101
www.kdvlaw.com

April 17, 2020

**VIA ECF**
Hon. Pamela K. Chen
United States District Court
Eastern District of New York
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Silvia Quintanilla v. Kabco Pharmaceuticals, Inc. Saiful Kibria, and Rozina Kabir*
Case No. 19-cv-6752 (PKC)(CLP)

Dear Judge Chen:

This office represents Defendants Kabco Pharmaceuticals, Inc., Saiful Kibria, and Rozina Kabir (collectively, the "Defendants") in the above referenced matter. We submit this letter in accordance with the Court's Order dated March 27, 2020 directing Defendants to supplement their motion to dismiss. For the reasons set forth herein, Defendants' present motion seeking an order: (i) dismissing the Fourth Claim For Relief in Plaintiff's Amended Complaint (the New York Labor Law ("NYLL") Frequency of Payment claim) in its entirety, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6); (ii) dismissing each of Plaintiff's class action allegations with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6); and (iii) entering an Order granting all such other and further relief as this Court deems just and proper, should be granted in its entirety.

Dismissal of Plaintiff's frequency of payment claim under NYLL § 191 is based upon Plaintiff's misconception that bi-weekly pay somehow supports a private right of action on its own without a further allegation of unpaid wages. Fatal to this claim, however, is the fact that Your Honor previously held that such a plaintiff is <u>not</u> entitled to any liquidated damages (the primary damage sought in this claim) for payments, which like here, were delayed two (2) weeks or less. As discussed herein, multiple Courts have similarly held that a private right of action simply does not exist for this type of claim. In addition, Plaintiff's class action claims must be dismissed in their entirety because they require individual proof and, as such, are not suitable for class action treatment as a matter of law. As such, Plaintiff's NYLL frequency of payment claim and each of Plaintiff's class action allegations must be dismissed in their entirety.

<u>Legal Standard</u>

If a complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" it must be dismissed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft* at 678. Simply put, the requisite inference of liability does not exist here. Even if Plaintiff's allegations are taken as true, Plaintiff fails to state a cognizable claim for relief regarding her frequency of payment and class claims. As such, these claims must be dismissed in their entirety, with prejudice.

Summary of Plaintiff's Relevant Allegations

In response to Defendants' pre-motion letter, Plaintiff filed an Amended Complaint. *See* Doc. No.[1] 16. In the Amended Complaint, Plaintiff alleged that she "commenced employment with KABCO as an hourly paid machine operator in or about 1995." *See* Doc. No. 16, ¶ 17. Among other things, Plaintiff alleges that Defendants paid Plaintiff on a "bi-weekly" basis, "Defendants failed to provide Plaintiff upon hire with written notice in her native language setting forth her basis of pay, rate of pay and other information required by NYLL §195(1)," and "Defendants failed to provide Plaintiff with accurate wage statements." *See* Doc. No. 16, ¶ 29 and 31-32. Plaintiff further seeks to pursue each of these claims on the behalf of a class comprised of "all persons who are currently, or have been employed by the Defendants in the State of New York as hourly-paid employees at any time during the six (6) years prior to the filing of this lawsuit whose job duties included operating machinery, filling capsules, manufacturing tablets, packaging pharmaceutical products, and labeling pharmaceutical products and whose wages were paid bi-weekly." *See* Doc. No. 16, ¶ 35. Significantly, Plaintiff does not allege that she is owed <u>any</u> wages. Notably, in an action pending in the Supreme Court of the State of New York, County of Nassau, titled *Yanet Rivera, on behalf of herself and all other persons similarly situated v. Kabco Pharmaceuticals, Inc., Saiful Kibria, Abu Kabir and Rozina Kabir* (Index No.: 616797/2019), Plaintiff's counsel is representing a plaintiff who alleges an identical NYLL § 191 frequency of pay claim against the same defendants against whom she initiated the present action against, also on a putative class-wide basis, and for which Defendants have similarly filed a motion to dismiss which is currently pending. As discussed herein, because Plaintiff has failed to state proper NYLL frequency of payment claim and proper class action claims, such claims must be dismissed in their entirety.

Argument

I. <u>Plaintiff Fails To State A Valid NYLL § 191 Frequency Of Payment Claim</u>

Because Plaintiff does not allege a claim of unpaid wages and was paid on a bi-weekly basis, Plaintiff does not have a private right of action to assert her frequency of pay claim. In fact, by amending her Complaint, Plaintiff only further exemplified this fact. In the Statement of Facts section of the initial Complaint, Plaintiff alleged that she was paid "bi-weekly or semi-monthly," yet Plaintiff clarified this assertion by confirming in the Statement of Facts section of the Amended Complaint that she was paid on a bi-weekly basis. *See* Doc. No. 1, ¶ 32 and Doc. No. 16, ¶ 29. In *Coley v. Vanguard Urban Improvement Ass'n*, 2018 U.S. Dist. LEXIS 50787, 42 (E.D.N.Y. 2018), Your Honor confirmed that the NYLL "seems to be 'geared to afford relief for unpaid wages, and <u>not</u> for late-paid wages" and, as such, refused to award liquidated damages for payments delayed two weeks or less. (citations omitted and emphasis added). In making this decision in *Coley*, Your Honor quoted *Hussain v. Pak. Int'l Airlines Corp.*, 2012 U.S. Dist. LEXIS

---

[1] "Doc. No." refers to the entry on the Court's Docket for the cited document.

152254, 8 (E.D.N.Y. 2012), which confirmed that "[t]he NYLL contains no provision for private recovery for violations of its provisions regarding frequency of payment." (emphasis added). *See Coley* at 42. Accordingly, because Plaintiff confirmed in her Amended Complaint that she was paid on a bi-weekly basis, as evidenced by Your Honor's holding in *Coley*, Plaintiff's NYLL frequency of pay claim must be dismissed in its entirety. *See* Doc. No. 16, ¶ 29.

Several other Courts have similarly held that there is no private-right of action for a frequency of payment claim in which, like here, no wages are alleged to be unpaid. *See Belizaire v. Rav Investigative & Sec. Servcs.*, 61 F.Supp.3d 336, at fn. 19 (S.D.N.Y. 2014) (Southern District clarified that "[t]he NYLL also allows for liquidated damages for unpaid (but not late-paid) wages."); *Hunter v. Planned Bldg. Servs., Inc.*, 2018 N.Y. Misc. LEXIS 2896, 4 (N.Y. Sup. Ct. Queens Cty. 2018) (holding that no private right of action existed for a frequency of pay violation unless there was nonpayment of wages); *Phillips v. Max Finkelstein, Inc.*, 115 N.Y.S. 3d 866 (N.Y. Sup. Ct. Suffolk Cty. 2019) (dismissing plaintiff's claim that defendants violated NYLL § 191 for failing to pay plaintiff on a weekly basis because no private right of action exists for a frequency of pay violation unless there was nonpayment of wages); and *Kruty v. Max Finkelstein, Inc.*, 2019 N.Y. Misc. LEXIS 6623, 8-9 (N.Y. Sup. Ct. Suffolk Cty. 2019) (concurring with the court in *Hunter* by stating that "the actual payment of wages in full albeit on a bi-weekly basis where the law requires payment on a weekly basis does not constitute an 'underpayment' that would trigger an employee's right to commence a lawsuit to recover the damages set forth in that section of the Labor Law."). As a result, because Plaintiff fails to allege any claim of unpaid wages, her claim of alleged untimely payment pursuant to the NYLL is not sufficient to support a private right of recovery.

In light of the foregoing, the Fourth Claim For Relief in Plaintiff's Amended Complaint (the NYLL § 191 Frequency of Payment claim) must be dismissed in its entirety as a matter of law.

II.  Plaintiff's Class Action Claims Require Individual Proof And Are Therefore Not Suitable For Class Action Treatment As A Matter Of Law

In the Amended Complaint, Plaintiff asserts three (3) class-wide causes of action, each of which are not suitable for class action treatment because they would require individual proof. As discussed above, in the Amended Complaint, Plaintiff amended the putative class definition to include "all persons who are currently, or have been employed by the Defendants in the State of New York as hourly-paid employees at any time during the six (6) years prior to the filing of this lawsuit whose job duties included operating machinery, filling capsules, manufacturing tablets, packaging pharmaceutical products, and labeling pharmaceutical products and whose wages were paid bi-weekly." *See* Doc. No. 16, ¶ 35. As such, because the putative class members are defined by their job duties, and not their job title or position, individualized mini-hearings would be necessary to review each putative class member's ability to be a member of the putative class.

In addition, even if assuming *arguendo* that Plaintiff somehow did state a proper claim for a NYLL § 191 frequency of payment violation (which Defendants vehemently disagree with), such a claim could not possibly continue on a class wide basis because of the individualized analysis that would be needed to determine whether each class member was in fact a "manual worker"

within the meaning of NYLL § 190(4). In this case, because the applicable provision of NYLL §191 specifies that a "manual worker" is entitled to weekly payments, the Court would need to conduct many individual mini-trials to determine whether each putative class member spent more than twenty-five percent (25%) of his or her time performing "physical labor" during his/her employment with Defendant Kabco in order to qualify as a "manual worker" and therefore potentially have a valid frequency of pay claim. *See* NYLL § 191(1)(a) and Ex. A,[2] pg. 2. Simply put, the determination of whether a putative class member is a "manual worker" as defined by NYLL § 190(4), is too individualized to maintain Plaintiff's untimely pay claim on a class-wide basis.

"[M]anagement of a class action in which [like here] there are so many individualized questions of proof is a strong reason to prefer individualized litigation." *See Calabrese v. CSC Holdings, Inc.*, 2009 U.S. Dist. LEXIS 134944, 75 (E.D.N.Y. 2009), adopted by *Calabrese v. CSC Holdings, Inc.*, 2009 U.S. Dist. LEXIS 13119 (E.D.N.Y. 2009). As described by Magistrate Judge Orenstein in *Calabrese*, in which a motion for class certification was denied, "an adjudication of the parties' disputes in the form of a class action would require an individual mini-trial on the merits of each putative class members…claim. By its nature, such an action would have virtually no advantage over separate trials, and would needlessly incur significant disadvantages arising from the litigation of so many separate questions of fact at once." *See Calabrese v. CSC Holdings, Inc.*, 2009 U.S. Dist. LEXIS 134944, 75-76 (E.D.N.Y. 2009); s*ee also Gregory v. Stewart's Shops Corp.,* 2016 U.S. Dist. LEXIS 89576, 64 (N.D.N.Y. 2016) (Court determined that a subclass was not ascertainable when it would "require a mini-hearing on the merits of each case.")

Accordingly, because each of Plaintiff's class action claims require individual proof, Plaintiff has failed to state proper class action claims. As such, each of Plaintiff's class action allegations should be dismissed in their entirety.

## Conclusion

Based on the foregoing, it is respectfully requested that the Court issue an Order: (i) dismissing the Fourth Claim For Relief in Plaintiff's Amended Complaint (the NYLL Frequency of Payment claim) in its entirety, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6); (ii) dismissing each of Plaintiff's class action allegations with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6); and (iii) entering an Order granting all such other and further relief as this Court deems just and proper.

Respectfully submitted,
Kaufman Dolowich & Voluck, LLP

Matthew Cohen

cc:   All counsel of record via ECF

---

[2] Attached hereto as Exhibit A is a true and accurate copy of a document from the New York State Department of Labor titled "Frequency of Pay Frequently Asked Questions."

# EXHIBIT A

**Frequency of Pay Frequently Asked Questions**

Labor Law Section 191 outlines the frequency by which employees must be paid.

> Manual Workers:  Wages must be paid *weekly* and not later than seven calendar days after the end of the week in which the wages are earned.  Manual workers for *non-profit entities* must be paid in accordance with their agreed terms of employment but not less frequently than semi-monthly.  Large employers of manual workers may apply to the Commissioner of Labor to pay manual workers semi-monthly.
>
> Railroad Workers:  Wages must be paid on or before Thursday of each week and must include wages earned during the seven-day period ending on the Tuesday of the preceding week.
>
> Commission Salespersons:  Wages must be paid in accordance with the agreed terms set forth in the written commission agreement but:
>
> - Not less frequently than once in each month
> - Not later than the last day of the month following the month in which the wages are earned
>
>  If wages are substantial, additional compensation earned, including extra or incentive earnings, may be paid less frequently than once in each month.
>
> Executives, Administrators, and Professionals:  Section 191 does not apply to persons employed in a *bona fide* executive, administrative, or professional capacity whose earnings are in excess of $900 a week.
>
> Clerical or Other Workers:  Wages must be paid in accordance with the agreed terms of employment and not less frequently than semi-monthly.

**Who is covered by Section 191 of the Labor Law?**

All *private sector* employers are covered by Section 191 and the protections apply to *most* employees working for such employers in New York.   Federal, state and local government employers are not covered. Charter schools, private schools, and not-for-profit corporations *are* covered, as they are private entities within the meaning of this provision.

While persons employed in a *bona fide executive, administrative, or professional capacity* who earn in excess of $900 per week are outside of the coverage of Section 191, an employee's status as "exempt" for overtime purposes does not remove him or her from the coverage of Section 191.

1

**Who is a "manual worker"?**

Section 190(4) of the New York State Labor Law defines a "manual worker" as "a mechanic, workingman or laborer." It has been the long-standing interpretation of this Department that individuals who spend more than 25% of working time engaged in "physical labor" fit within the meaning of the term "manual worker." Furthermore, the term "physical labor" has been interpreted broadly to include countless physical tasks performed by employees.

**Who is a "railroad worker"?**

Section 190(4) of the Labor Law defines a "railroad worker" as any person employed by an employer who operates a steam, electric, or diesel surface railroad or is engaged in the sleeping car business. The term "railroad worker" does not include a person employed in an executive capacity. Railroad workers do not include employees of governmental agencies.

**Who is a "commission salesman"?**

A commission salesman or salesperson is defined in Section 190(6) of the Labor Law as any employee whose:

- Principal activity is the selling of any goods, wares, merchandise, services, real estate, securities, insurance or any article or thing
- Earnings are based in whole or in part on commissions

The term "commission salesman" does not include an employee whose principal duties are of a supervisory, managerial, executive, or administrative nature, even if such employee also engage in the sale of goods etc.

**Who is a "person employed in a 'bona fide' executive, administrative, or professional capacity"?**

The definitions set forth in regulation 12 NYCRR §142-2.14 are used to define the terms "executive, administrative, and professional" for purposes of Section 191 of the Labor Law. (*In re Yorke*, PR-07-035 [2008].) However, this regulation does not reflect the statutory earnings threshold in Section 191. Therefore, the $900 earnings threshold contained in Section 191 substitutes for the amounts contained in regulation 12 NYCRR §142-2.14.

<u>Executive</u>

To qualify as a bona fide <u>executive</u>, all of the following tests must be met:

- The Employee's primary duty consists of the management of the enterprise
- The Employee customarily and regularly directs the work of two or more other employees

2

- The Employee has the authority to hire or fire other employees
- The Employee's suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees have particular weight
- The Employee customarily and regularly exercises discretionary powers
- The Employee must be paid in excess of $900 per week

Administrative:

To qualify as a bona fide administrative employee, all of the following tests must be met:

- The Employee's primary duty consists of the performance of office or non-manual fieldwork, directly related to management policies or general operations.
- The Employee customarily and regularly exercises discretion and independent judgment.
- The Employee regularly and directly assists an employer, or an employee employed in a bona fide executive or administrative capacity or who performs under general supervision, work along specialized or technical lines requiring special training, experience or knowledge.
- The Employee must be paid in excess of $900 per week.

Professional

To qualify as a bona fide professional employee, all of the following tests must be met:

The employee's primary duty consists of the performance of work that:

- Requires knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from
    - A general academic education
    - An apprenticeship
    - Training in the performance of routine mental, manual, or physical processes

    **or**
- Is original and creative in a recognized field of artistic endeavor, and produces a result that depends primarily on the invention, imagination, or talent of the employee

The employee's work:

- Requires the consistent exercise of discretion and judgment in its performance
- Is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical or physical work)

3

- Is of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time

<u>The employee must be paid in excess of $900 per week.</u>

**Who is a "clerical or other worker"?**

A "clerical or other worker" under New York State Labor Law is an employee who does not fall under any of the other statutory categories of worker found in the Labor Law. That is, NOT a "manual worker" under Section 190(4), a "railroad worker" under 190(5), a "commission salesman" under 190(6), or an employee employed in a "bona fide executive, administrative or professional capacity." An employee who fits within any of those other definitions is not a "clerical or other worker."

**Can large employers pay manual workers bi-weekly?**

A company may apply to the Department for permission to pay manual workers bi-weekly if the company:

- Has had an average of 1,000 employees in New York for the three years preceding the application
- Had an average of 3,000 out-of-state employees for the three years preceding the application and an average of 1,000 employees in New York for the year preceding the application

The Department will consider a number of factors dealing with the employer's financial stability and history of compliance under the Labor Law. Where the manual workers are represented by a labor organization, a permit will not be granted without consent from that organization.

**Can an employer require employees to accept other frequencies of pay?**

Employees cannot be required, as a condition of employment, to accept wages at periods other than those provided in Section 191 of the Labor Law.

**Do partial wage payments satisfy an employer's obligations under Section 191 of the Labor Law?**

Section 191 of the Labor law requires the timely payment *in full* for all hours worked at an employee's agreed-upon rate of pay.

**When are employers required to pay employees whose employment has ended due to termination, retirement, or resignation?**

4

Employees whose employment has ended are entitled to be paid no later than the pay day on which their next pay would have been due had they still been employed. Upon request of the employee, employers are required to mail the employee his or her wages. Nothing in the Labor Law prevents an employer from paying a terminated employee his or her wages at:

- The time of termination
- Some other time before the payday on which the wages would have been due

**May employers mail employees their paychecks?**

Nothing in the Labor Law prohibits an employer from mailing an employee his or her paycheck. However, employees must *receive* their paycheck in the time specified in Section 191, as described above. Therefore, employers must allow sufficient time for the mail to be delivered to the employee to avoid violations of Section 191.

**Are employers required to issue employees replacement paychecks?**

Employers are required to issue, without charge to the employee, a new paycheck (or otherwise pay wages to the employee) if a previously issued paycheck:

- Was lost
- Is otherwise no longer in the employee's possession

Regardless of the circumstances under which the check was lost, employers are prohibited by Sections 191 and 193 of the Labor Law from charging an employee through wage deduction for:

- Any fees incurred for stopping payment on a check
- The costs incurred for issuing a new check

**What is a "substantial" amount of wages?**

The frequency of pay requirement for commission salespersons permits additional compensation earned, including extra or incentive earnings, to be paid less frequently if the employee's wages are "substantial." The Department has determined that the term "substantial" should be viewed in accordance with the threshold amount for employees working in a bona fide executive, administrative, or professional capacity. Currently, the threshold amount is $900 per week.

**What should employers do if an employee dies?**

Section 191 of the Labor Law has been interpreted to required that employers make reasonable efforts pay deceased employee's wages within the time periods specified in that Section. Reasonable efforts should include the following:

5

- Contact any emergency contact or next of kin identified in the employee's personnel file
- Attempt to contact any known family or friends of the employee, if other than the emergency contact
- Contact the Surrogate's Court to determine whether estate or probate proceedings have been commenced and an estate administrator identified
- Review obituary notices to locate the widow, widower or other family member of the deceased employee
- Speak with the funeral director handling the deceased's funeral arrangements to either obtain contact information on the deceased's family or to send a message to the family to be in contact with the employer
- Contact insurers on company sponsored life insurance to identify beneficiaries who can be contacted for estate information
- Contact the County Health Department or other entity that issues Death Certificate to find out the identity of the next of kin listed on the Certificate

In addition to these efforts, the employer may certainly undertake any additional efforts designed to identify an appropriate contact. If, after these efforts, the employer is unable to locate or contact the estate representative or next of kin of the employee, the employer must remit the funds to the Office of the State Comptroller after three years in accordance with the State Abandoned Property Law.