LAW OFFICE OF
**PETER A. ROMERO**

Peter A. Romero
promero@romerolawny.com

David D. Barnhorn
dbarnhorn@romerolawny.com

Hon. Pamela K. Chen, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

May 8, 2020

    Re:   *Silvia Quintanilla v. Kabco Pharmaceuticals, Inc. et al*.
            Docket No. 19-CV-06752 (PKC) (CLP)

Dear Judge Chen:

    This firm represents Plaintiff Silvia Quintanilla in the above-referenced action. We write in opposition to Defendants' motion pursuant to Fed. R. Civ. P. 12(b)(6) seeking dismissal of Plaintiff's delayed payment claim under New York Labor Law § 191 and dismissal of Plaintiff's class action allegations.

    Plaintiff brought this claim on behalf of herself and putative class members to recover liquidated damages for untimely wage payments. Plaintiff was employed by Defendants as an hourly-paid machine operator. NYLL § 191(1)(a) requires that manual workers be "paid weekly and not later than seven calendar days after the end of the week in which wages are earned." Defendants paid Plaintiff's wages bi-weekly pursuant to a company-wide payroll scheme, rather than paying her weekly as required by NYLL § 191(1)(a). NYLL § 198(1-a) provides that "[i]n any action instituted in the courts upon a wage claim by an employee…in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer provides a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of wages found to be due."

    Defendants seek dismissal of Plaintiff's frequency of payment claim under NYLL § 191, asserting that the Amended Complaint fails to state a cause of action. Defendants argue that Plaintiff does not have a private right of action to assert her frequency of payment claim. Defendants' argument is predicated on the fact that although Plaintiff alleges that her wages were not *timely* paid, she does not allege a claim for *unpaid* wages. Defendants, however, inexplicably fail to acknowledge, let alone address, several recent adverse authorities in their disingenuous effort to convince the Court that there is no relief for employees whose wages are paid late by their employer. *See Vega v. CM and Associates Construction Management, LLC*, 107 N.Y.S.3d 286 (1st Dep't 2019); *Scott v. Whole Foods Market*, 2019 WL 1559424 (E.D.N.Y. Apr. 9. 2019); *see also Rojas v Hi-Tech Metals, Inc.*, 2019 WL 4570161, at *3 (Sup. Ct. Queens Cnty. Sept. 11, 2019).

    In *Vega*, the Appellate Division held that liquidated damages are available under NYLL § 198(1-a) "to provide a remedy to workers complaining of untimely payment of wages, as well as nonpayment or partial payment of wages." *Id*. at 288. Indeed, the Court rejected the very argument that Defendants advance here: "[C]ontrary to defendant's argument that 198 provides remedies only in the event of nonpayment or partial payment of wages (but not in the event of late payment

of wages), the plain language of the statute indicates that individuals may bring suit for any 'wage claim' against an employer. The remedies provided by section 198(1-a) apply to 'violations of article 6 and section 191(1)(a) is a part of article 6." *Id.* at 287-88 (citing *Gottlieb v. Kenneth D. Laub & Co.*, 82 N.Y.2d 457, 463 (1993)). Thus, the court held that NYLL §198(1-a) expressly provides a private right of action for a violation of NYLL § 191. The court explained that, "[c]ontrary to defendant's argument, the term underpayment encompasses the instances where an employer violates the frequency requirements of section 191(1)(a) but pays all wages due before the commencement of an action…The word underpayment is the noun for the verb underpay; underpay is defined as 'to pay less than what is normal or required.'" *Id.* at 288. As is crucial to this matter, the Appellate Division found that "[t]he moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required."[1] *Id.*

The Court also held that in interpreting the liquidated damages provisions of the FLSA, the Supreme Court has held that, regardless of whether an employee has been paid wages owed before the commencement of the action, the statute provides for a liquidated damages remedy for the "failure to pay the statutory minimum on time." *Id.* (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)). The *Vega* Court observed that although the wording of the FLSA and NYLL liquidated damages provisions are not identical, there are "no meaningful differences, and both are designed to deter wage-and-hour violations in a manner calculated to compensate the party harmed." *Id.* at 288 (quoting *Rana v. Islam*, 887 F.3d 118, 122-23 (2d Cir. 2018)). Moreover, the *Vega* Court further noted that the legislative history of the 1967 amendment to section 198 reflects that liquidated damages were intended not only to compel employer compliance with the provisions of article 6, but also to "compensate the employee for the loss of the use of the money to which he was entitled…*The employee loses the use of money whether he or she is never paid, partially paid, or paid late.*" *Id.* at n. 2 (emphasis added).

Thus, the Appellate Division in *Vega* concluded that "Labor Law 198(1-a) expressly provides a private right of action for a violation of Labor Law 191." *Id.* at 288. Here, as in *Vega*, "Defendant's position that no private right of action exists is dependent on its erroneous assertion that the late payment of wages is not an underpayment of wages."[2] *Id.*

Notably, even if NYLL § 198(1-a) did not expressly authorize a private right of action, the Appellate Division, and this district court in *Scott*, held that a remedy is implied. *Id.* at 288-89; *Rojas*, 2019 WL 4570161, at *3 (finding a private right of action and applying *Vega*); *Scott*, 2019 WL 1559424, at *3-4. A remedy "may be implied when (1) the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) recognition of a private right of action would promote the legislative purpose of the statute; and (3) to do so would be consistent with the legislative scheme." *AHA Sales, Inc. v. Creative Bath Prod., Inc.*, 58 A.D.3d 6, 15 (2d Dep't 2008) (citing *Sheehy v. Big Flats Cmty. Day,* 73 N.Y.2d 629, 633 (1989)) (holding private right of action may be implied under NYLL § 191-b, which governs contracts with sales representatives).

---

[1] A contrary interpretation "leaves an aggrieved employee with no recourse, but rather allows an employer to perpetually violate § 191 simply by paying the employee, in full, after a delay beyond the one-week period set by statute. Permitting an employer to flout the requirements of § 191 with impunity, so long as it eventually pays its employee the wages owed, is inconsistent with the stated purposes of the NYLL." *Scott*, 2019 WL 1559424, at *4.
[2] The Department of Labor has found a private right of action exists as it advised that an employee may file a complaint with the DOL or bring an action for violation of NYLL § 191. *See* N.Y. Dep't of Labor Counsel Op. Letter, RO-10-0003, Oct. 28, 2010, at *3-4.

In *Scott*, the Court cogently determined that an implied private right of action existed under NYLL § 191. After analyzing each of the factors, that Court found plaintiffs were alleged to be manual workers and therefore members of the class designed to benefit from § 191(a); the legislative purpose of the frequency of payment statute "was to protect the manual worker who was dependent upon the 'wages' he received weekly for his existence" and allowing workers to sue employers who do not pay them weekly under § 191 clearly promotes the statute's legislative purpose; and "there is nothing in the statutory scheme…that suggests that a private right of action is barred or would otherwise run counter to the legislative scheme." 2019 WL 1559424, at *3.

Defendants do not even mention *Vega* and *Scott*, let alone make any attempt to distinguish these thoughtful, well-reasoned decisions. Instead, Defendants rely on cases decided **before** *Vega* and *Scott*, such as *Hussain v. Pak. Intl' Airlines Corp.*, 2012 WL 5289541 (E.D.N.Y. 2012), *Coley v. Vanguard Urban Improvement Assoc., Inc.*, 2018 WL 1513628 (E.D.N.Y. 2018), and *Hunter v. Planned Building Services, Inc.*, 2018 NY Slip Op. 31541(U) (Trial Order), 2018 WL 3392476 (Sup. Ct. Queens Cnty. June 20, 2018). *Coley* was decided in the context of a default judgment and, therefore, the issue of whether the NYLL provides a remedy for late-paid wages was not briefed by either party. Moreover, unlike this matter, the *Coley* court had already awarded the plaintiffs liquidated damages for delayed payments under the FLSA. *Id.* at *13-14. Thus, the *Coley* plaintiffs could not have recovered liquidated damages for untimely wages under the NYLL because "[p]laintiffs are not entitled to liquidated damages under both the FLSA and NYLL." *Id.* at *11 (citing *Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59, 60-61 (2d Cir. 2016)).

Defendants also rely on a footnote found in *Belizaire v. Rav Investigative & Sec. Servs.*, 61 F.Supp.2d 336, n. 22 (S.D.N.Y. 2014). Like *Coley*, *Belizaire* was decided in the context of a damages inquest following a default judgment. The plaintiff in *Belizaire* was *pro se* and the defendant made no appearance. Thus, the issue whether the NYLL provides a remedy for late-paid wages was not briefed by either party. Adopting the report and recommendation, the district court awarded plaintiff liquidated damages under the FLSA as compensation for defendant's failure to pay him on a timely basis, but it did not award liquidated damages under the NYLL. As in *Coley*, the court's decision not to award plaintiff liquidated damages under the NYLL in *Belizaire* did not materially affect plaintiff's recovery because "[p]laintiff should not recover twice for the same injuries," 61 F.Supp.3d at 357, a proposition that does not pertain to this litigation.

Finally, Defendants rely on two poorly-reasoned companion cases, decided the same day by the same judge. *See Phillips v. Max Finkelstein, Inc.*, 115 N.Y.S.3d 866 (Sup. Ct. Suffolk Cnty. 2019) and *Kruty v. Max Finkelstein, Inc.*, 65 Misc.3d 1236(A) (Sup. Ct. Suffolk Cnty. 2019). That court declined to follow *Vega* but made no effort to explain why *Vega* or *Scott* were wrongly decided or find fault in the reasoning of either of those decisions. Instead, the court concluded that it was not bound by *Vega* based on *IKEA U.S., Inc. v. Industrial Board of Appeals*, 241 A.D.2d 454 (2d Dep't 1997). The defendants in *Phillips and Kruty* incorrectly asserted that in *IKEA*, the Second Department had "in fact ruled on the issues before now before the court." *Id.* at 869. In truth, however, the issue of whether or not a private right of action exists for violation of NYLL § 191 was not before the court at all in *IKEA*.

In *IKEA*, the Commissioner of Labor found that the employer violated NYLL § 191 by paying manual workers bi-weekly and assessed civil penalties against the employer. 241 A.D.2d

at 454; *Phillips*, 115 N.Y.S.3d at 868. The employer brought an Article 78 proceeding to review the Industrial Board of Appeals' ("IAB") decision that it violated the frequency of payment statute. *IKEA*, 241 A.D.2d at 454. The sole issue before the Appellate Division was whether the IBA's determination that IKEA violated the statute was supported by substantial evidence, *Id.* at 455, not whether a private right of action existed. Specifically, IKEA challenged the finding that the named employees were "manual workers." *Id.* at 455. Thus, the issue before the court in *IKEA* was limited to whether the evidence supported the determination that the employer's staff were manual workers and that it violated the statute. Thus, the Second Department did not suggest, let alone hold, that employees do not have a right to bring a claim for violation of NYLL § 191.

Nevertheless, the defendants in *Phillips* and *Kruty* argued that because the Commissioner did not explicitly make a finding that IKEA's failure to timely pay wages constituted an "underpayment," it therefore did not assess liquidated damages for the benefit of its employees.[3] *Phillips*, 115 N.Y.S.3d at 868. They further argued, and the court apparently agreed, that since the Second Department "*upheld this determination,*" it has "*implicitly ruled that such remedies are not available*" where the employer has paid wages in full but late. *Id.* The logic of this reasoning is seriously flawed. The only determination that the Appellate Division "*upheld*" was the determination that the employer had violated NYLL § 191 by paying manual workers bi-weekly, after rejecting the employer's argument that its employees were not manual workers. Despite this narrow ruling, the *Phillips/Kruty* Court oddly found meaning in IKEA well beyond its actual holding. The court concluded that *IKEA*, a decision with only *four* short paragraphs focusing on whether employees were manual workers, somehow stands for the proposition that delayed payment of wages is not an underpayment and that there is no private right of action for violation of NYLL § 191. *Phillips*, 115 N.Y.S.3d at 869. The Second Department, however, did not address either of those questions because those issues were not before the court. Thus, *Phillips* and *Kruty* mistakenly rely on *IKEA* for a ruling that court did not and could not have made.[4] It is worth

---

[3] This was rank conjecture. It is equally plausible that the Commissioner did not assess liquidated damages because "[b]efore the 2009 amendment altering the mental state required for an employer to be liable for liquidated damages, the NYLL required the employee to prove that an employer's violation of the statute was "willful," *Rivera v. Harvest Bakery Inc.*, 2018 WL 4214337, at *9 (E.D.N.Y. Aug. 17, 2018), *report and recommendation adopted*, 2018 WL 4211301 (E.D.N.Y. Sept. 4, 2018), which required a showing that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011). Those issues were not before the court to assess. Moreover, §198(1-a) explicitly provides that individuals may bring suit against an employer for violations of the labor laws, even if the Commissioner chooses not to do so.

[4] This court is bound to apply the decisions of state appellate courts on matters of substantive law. *Argentina v. Emery World Wide Delivery Corp.*, 167 F.R.D. 359, 361 (E.D.N.Y. 1996) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)) (state substantive law must be applied by federal courts); *In re Curb Serv. Laundry & Dry Cleaning*, 145 F.2d 756 (2d Cir. 1944) (federal courts must follow highest court of a state when construing a state statute); *Solomon v. Artuz*, 2000 WL 863056, at *7 (S.D.N.Y. June 28, 2000) (citing *McCarthy v. Olin Corp.*, 119 F.3d 148, 153 (2d Cir.1997); *In re Brooklyn Navy Yard Asbestos Litigation*, 971 F.2d 831, 850 (2d Cir.1992); and *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 1995 WL 731620, at *1 (S.D.N.Y. Dec. 8, 1995)) ("In the absence of a New York Court of Appeals decision, an Appellate Division decision interpreting New York law is instructive as to what the New York Court of Appeals would hold."). This Court is bound to follow the *Vega* decision since it is the only appellate division ruling to squarely address the issue. *See Phillips*, 115 N.Y.S.3d at 868 (citing *Mountain View Coach Lines, Inc. v. Betty Storms*, 102 A.D.2d 663 (2d Dep't 1984) (acknowledging that *Vega* governs if no other Second Department decisions apply); *Mountain View Coach Lines, Inc.*, 102 A.D.2d at 664 (noting that the Appellate Division is a single court divided into departments for convenience and that, as a result, "the doctrine of *stare decisis* requires trial courts in this department to follow precedents set by the Appellate Division of another department until the Court of Appeals or [the direct appellate department] court pronounces a contrary rule").

noting that *IKEA* has not been cited by any other court as a basis upon which to dismiss a frequency of payment claim under NYLL § 191[5]. Given the strained logic of their holding, it is also no surprise that *Phillips* and *Kruty* have not been cited or mentioned with approval by any other court.

Defendants separately argue that Plaintiff's frequency of payment claim is not suitable for class action treatment and the class action allegations should be dismissed. The class members' injuries in this case derive from a unitary course of conduct, namely Defendants' payroll practice of paying their employees bi-weekly. This unitary course of conduct is susceptible to common proof and documentary evidence, such as Defendants' payroll records, which can be used to establish Defendants' liability.[6] Defendants argue that dismissal is warranted because the Court would be required to conduct individualized mini-trials to determine whether each worker was a "manual worker" within the meaning of NYLL § 190(4). Defendants are correct that the Department of Labor deems individuals who spend more than 25% of working time engaged in "physical labor" to be within the definition of "manual worker." However, the Department "interprets 'physical labor' to broadly include countless physical tasks performed by employees," an "interpretation…in line with the instruction of the New York Court of Appeals providing that the Labor Law should be read broadly in favor of worker protections." *See* N.Y. Dep't of Labor Counsel Op. Letter, RO-09-0115, Dec. 2, 2009 (citing *Red Hook Cold Storage Co. v. Dep't of Labor*, 295 N.Y. 1 (1945)). Plaintiff's proposed class consists of employees whose job duties included operating machinery, filling capsules, manufacturing tablets, packaging pharmaceutical products, and labeling pharmaceutical products – all tasks requiring manual labor – and who are members of the class for whose benefit NYLL § 191 was enacted. *See Hudson Valley Mall Dental v. Commissioner of Labor*, PR 12-034 (Indus. Bd. of Appeals Aug. 7, 2014) ("The traditional notion of manual worker, the 'mechanic, workingman or laborer' generally includes a sense of interchangeable physical labor that can be done by multiple individuals with the capacity to move material or things from one place to another" and include "typically low-skilled" workers that "can be easily replaced by other able-bodied workers. This general skill level and easy replacement led to labor laws aimed to protect workers by insuring that workers who were dependent upon wages earned for a week's work received them on a weekly basis" and noting warehouse workers that move and package products are manual workers). The putative class members in this case fall squarely within the definition of manual workers.

---

[5] The *IKEA* case was cited, however, in *Cuzco v. Orion Builders, Inc.*, 2010 WL 2143662, at *4 (S.D.N.Y. May 26, 2010), wherein the court granted plaintiffs' summary judgment on their claims that defendants violated the timely payment provisions of NYLL § 191, as well as in *Busgith v. Hudson News Co.*, Index No. 0015087/2005 (Sup. Ct. Queens Cty., Apr. 8, 2008) (denying defendant's motion to dismiss NYLL §191 claim).

[6] The two cases relied upon by Defendants for dismissal of class action allegations are readily distinguished. One of them involved allegations of "off-the-clock" work as opposed to a company-wide practice like the one alleged in this case. *Gregory v. Stewart's Shops Corp.*, 2016 WL 8290648, at *11 (N.D.N.Y. July 8, 2016) (citing *Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278, 306 (E.D.N.Y. 2013) ("a review of the case law in this Circuit confirms that cases, like this one, involving allegations of 'off-the-clock' work, are less susceptible of class-wide resolution than other types of wage and hour cases). The other case, *Calabrese v. CSC Holdings, Inc.*, 2009 WL 425879 (E.D.N.Y. Feb. 19, 2009), held that individualized proof was required because the plaintiffs' civil racketeering claims were based on allegations of *fraud* and *extortion* where the class members received oral communications involving divergent messages, rather than a single uniform communication. *Id.* at *24. Moreover, the court noted that the reliance factor of a RICO claim based on fraud uniquely requires individualized findings that preclude a finding of predominance. *Id.* at *25.

Defendants' objections to Plaintiff's amended class definition simply do not constitute a basis to dismiss the class action claims at the motion to dismiss stage. *See, e.g.*, 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1759 (3d ed. 2005) ("if plaintiff's definition of the class is found to be unacceptable, the court may construe the complaint or redefine the class to bring it within the scope of Rule 23 or it may allow plaintiff to amend in order to limit the class."). It is well-established that "[t]he court may, in its discretion ... modify the definition of the proposed class to provide the necessary precision or to correct other deficiencies. In fact, the court has a duty to ensure that the class is properly constituted and has broad discretion to modify the class definition as appropriate to provide the necessary precision." *Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 114 (E.D.N.Y. 2011) (quoting 5 James W. Moore et al., *Moore's Federal Practice* § 23.21[6] ); *see also Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir.1993) ("A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly."). Thus, while Plaintiff contends the class definition is properly pleaded, the Court may later modify it if discovery reveals a basis to do so. It would be inappropriate, however, to dismiss Plaintiff's class allegations without any discovery.

For all the foregoing reasons, Defendants' motion should be denied in its entirety.

Respectfully submitted,

*/s Peter A. Romero*

PETER A. ROMERO

cc: All Counsel of Record via ECF