1

1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2    - - - - - - - - - - - - - - - X
                                   :
3      SILVIA QUINTANILLA,         :   19-CV-06752(PKC)
                                   :
4              Plaintiff,          :
                                   :
5                                  :   United States Courthouse
       -against-                   :   Brooklyn, New York
6                                  :
                                   :
7                                  :   June 30, 2020
       KABCO PHARMACEUTICALS,      :   12:00 p.m.
8      INC., et al.,               :
                                   :
9              Defendants.         :
                                   :
10   - - - - - - - - - - - - - - - X

11   TRANSCRIPT OF CIVIL CAUSE FOR ORAL ARGUMENT VIA TELECONFERENCE
              BEFORE THE HONORABLE PAMELA K. CHEN
12               UNITED STATES DISTRICT JUDGE

13            A P P E A R A N C E S :

14   For the Plaintiff:      LAW OFFICE OF PETER A. ROMERO PLLC
                             825 Veterans Highway
15                           Hauppauge, New York 11788

16                           BY:  PETER ROMERO, ESQ.
                                  DAVID BARNHORN, ESQ.
17

18   For the Defendant:      KAUFMAN DOLOWICH & VOLUCK, LLP
                             135 Crossways Park Drive
19                           Suite 201
                             Woodbury, New York 11797
20
                             BY:  MATTHEW COHEN, ESQ.
21

22   Court Reporter:         DENISE PARISI, RPR, CRR
                             Official Court Reporter
23                           Telephone: (718) 613-2605
                             E-mail:  DeniseParisi72@gmail.com
24

25   Proceedings recorded by computerized stenography.  Transcript
     produced by Computer-aided Transcription.

*Proceedings*                                                              2

1          (All parties present via teleconference.)

2          THE COURTROOM DEPUTY:  Civil cause for oral

3    argument, docket 19-CV-6752, Quintanilla versus Kabco

4    Pharmaceuticals, Inc., et al.

5          Before asking the parties to state their appearances

6    for the record, I would like to note the following:  Persons

7    granted remote access to proceedings are reminded of the

8    general prohibition against photographing, recording, and

9    rebroadcasting of court proceeding.  Violation of these

10   prohibitions may result in sanctions, including removal of

11   court-issued media credentials, restricted entry to future

12   hearings, denial of entry to future hearings, or any other

13   sanctions deemed necessary by the Court.

14         Will the parties please state their appearances for

15   the record starting with the plaintiff.

16         THE COURT:  Plaintiff's counsel?

17         MR. BARNHORN:  David Barnhorn is here as plaintiff's

18   counsel, as is Mr. Romero, who will be doing the oral

19   argument, who I'm not hearing currently.

20         MR. ROMERO:  I apologize.  This is Peter Romero.  My

21   phone was on mute, Your Honor.  I apologize.

22         THE COURT:  Okay.  Good morning.

23         MR. ROMERO:  Good morning.

24         THE COURT:  For the defense?

25         MR. COHEN:  Good afternoon, Your Honor.

1       My name is Matthew Cohen.  I'm an attorney from

2  Kaufman, Dolowich, Voluck.  We represent the three defendants.

3       THE COURT:  Okay.  Good afternoon to you, Mr. Cohen.

4       We are here, as the parties are aware, for oral

5  argument on the motion of defendants' to dismiss the New York

6  Labor Law claim under Section 191, which alleges the failure

7  to timely pay, as required by the statute.  And then the

8  second basis of the motion is to dismiss the class allegations

9  under Rule 23, or those allegations purporting to name a class

10 under Rule 23.

11      So I will hear from defendant first, Mr. Cohen,

12 since it's your motion.  I'm obviously familiar with the

13 arguments from your written submission, but if you want to

14 highlight anything on either basis, go ahead.

15      MR. COHEN:  All right.  Thank you, Your Honor.

16      First, plaintiff's frequency-of-pay claim, pursuant

17 to the New York Labor Law, should be dismissed in its

18 entirety.  Significantly, plaintiff does not allege any

19 underpayment of wages and confirms that she was paid on a

20 biweekly basis.  In our opposition to the present motion,

21 plaintiff seeks to completely ignore the two most

22 recently-cited cases in either of the parties' briefs and

23 seeks to overturn Your Honor's own ruling in *Coley vs.*

24 *Vanguard Urban Improvement Association* from 2018.  As Your

25 Honor confirms and correlates, the New York Labor Law seems to

1    be geared to afford relief for unpaid wages and not for late

2    paid wages.

3             In addition, and correlate, Your Honor held that two

4    weeks is an appropriate standard to use in assessing whether

5    defendants delayed payments to plaintiff adopting the same

6    standards in the present action leading to a dismissal of the

7    frequency-of-payment claim.

8             While plaintiff seeks to rely on the *Vega* decision

9    from the First Department in New York, contrary authorities

10   stemming from courts located within the Second Department,

11   which is the same department that the defendants are located

12   in, as such, this court is not bound by --

13            THE COURT:  Mr. Cohen, let me ask you to slow down a

14   bit because, remember, we have a court reporter who is trying

15   to transcribe everything.

16            MR. COHEN:  Absolutely.  My apologies, Your Honor.

17            So, as such, this Court is not bound by the *Vega*

18   decision.

19            Most recently, two apparent companion cases in the

20   Suffolk County Supreme Court -- *Phillips vs. Max Finkelstein*

21   and *Kruty vs. Max Finkelstein Incorporated* -- were decided

22   over three months after *Vega* in December 2019.

23            THE COURT:  Let me pause you again.

24            Just for the court reporter, *Kruty*, K-R-U-T-Y, *vs.*

25   *Max*, like a person's name, *Finkelstein*, separate word.

1          Okay.  Go ahead.

2          MR. COHEN:  Thank you, Your Honor.

3          In each of these decisions, the Court agreed with a

4   2018 Queens County Supreme Court decision, *Hunter vs. Planned*

5   *Building Services Incorporated*, which held that no private

6   right of action existed for a frequency of pay violation

7   unless there was nonpayment of wages.  As a result,

8   plaintiff's frequency-of-pay claim should be dismissed in its

9   entirety.  In addition, plaintiff's class claims should be

10  denied under -- dismissed in their entirety.

11          Plaintiff failed to oppose -- first off, plaintiff

12  failed to oppose defendants' argument that the punitive class,

13  as defined in plaintiff's amended complaint, would require

14  individualized mini hearings to determine membership because

15  such punitive class members are defined by their job duties

16  and not their job title or position.  Because this assertion

17  is undisputed, plaintiff's class claim should be dismissed in

18  their entirety.

19          Moreover, whether each punitive class member spent

20  more than 25 percent of his or her time performing physical

21  labor to fit within the definition of "manual labor" would

22  also necessitate such mini trials concerning the

23  frequency-of-pay claim and thus provides another reason for

24  dismissal of the class-wide frequency-of-pay claim.

25          Thank you, Your Honor.

*Proceedings*                                                                6

1        THE COURT:  Let me ask you one question about your

2   argument on the class allegations.

3        Isn't your motion premature?  Because, at this

4   point, I don't have any basis upon which to decide whether or

5   not the class can be defined in the manner that the plaintiffs

6   have done where they name what the actual duties are that

7   qualify as manual labor.  The cases that you cite are ones

8   that were at the class certification stage after evidence had

9   been taken during discovery and at the time that the plaintiff

10   sought to have the class certified; and the courts there --

11   including Judge Orenstein from our court -- were looking at

12   actual evidence and issues that had been developed during the

13   course of discovery.

14        Here there's an allegation that a class can be

15   defined by certain duties, and at this point, I don't think I

16   have any basis upon which to find that that can't be done or

17   that that would require mini trials, as you say.  In fact, it

18   seems to me the opposite is likely to be true, which is that

19   people occupy positions where they are expected to perform

20   certain duties and that that is something that can be

21   determined readily through some kind of discovery.

22        While I agree with you that the plaintiff hasn't

23   alleged everyone who fits in job description X or Y, it seems

24   to me that what they have alleged is likely going to be

25   readily provable or ascertainable, which is one of the issues,

*Proceedings*                                                        7

1    of course, addressed with respect to defining a class.

2              So why would I decide that now, I guess.

3              MR. COHEN:  Well, I certainly understand your

4    argument, Your Honor.  You know, our position is that the

5    plaintiff has failed to plead a proper class definition and

6    that by defining it based on job duties, you know, it's our

7    position that, you know, it would be difficult to ascertain.

8    And everybody has different job duties, whether or not they

9    were performing such job duties, it differs from just taking

10   something off of a job description.  You actually would have

11   to look into day-to-day activities of what each specific

12   previous class member was doing, so that's why our position

13   was that, just on the definition alone, that they failed to

14   state a proper class definition at the time.

15             THE COURT:  Let me ask you, what kind of place is

16   Kabco Pharmaceuticals?  Does it produce pharmaceuticals or

17   sell them?

18             MR. COHEN:  Yeah.  They manufacture and market

19   supplements -- kind of like vitamins, minerals, food

20   supplements, things like that.

21             THE COURT:  Is it a factory of some sort?

22             MR. COHEN:  Not really a factory.  It's actually

23   relatively small.  I believe currently, at least during the

24   pandemic, when I recently spoke to them they only had nine

25   employees at the time, so --

1           THE COURT:  Nine?

2           MR. COHEN:  Yes.  So it's a relatively small place.

3   So my understanding how it -- it's like a -- you know, like a

4   manufacturer in the broad sense that you might think of a huge

5   facility, it's more of a smaller area, but they do manufacture

6   and market supplements.

7           THE COURT:  So how difficult would it be to figure

8   out if nine or so employees fit within the class definition?

9           MR. COHEN:  You would have to have depositions for

10  each of the nine, you know, discovery on each of the nine.

11  You would have to have, you know, separate discovery on each

12  of the few -- person, and those are just the ones that were

13  there, you know, as of when I last spoke -- you know, it

14  remains to be seen what kind of turnover there was and stuff

15  like that --

16          (Court reporter requested clarification.)

17          MR. COHEN:  You know, there would have to be

18  separate discovery, you know, at a minimum on each of those

19  nine persons, and to the extent there was any turnover,

20  obviously there would have to be additional discovery on other

21  former employees.  So even though it's a relatively small

22  company, which, that alone, might ultimately preclude it from

23  the class later on, you know --

24          THE COURT:  Right, based on numerosity.

25          MR. COHEN:  Exactly.  It's still -- you know, I feel

1    it's unnecessary -- it's unnecessarily burdensome to just,

2    because of a broad definition, that you go into discovery for

3    each specific person.

4          THE COURT:  But even in the case that you cite, the

5    Court recognized the notion, which the plaintiff relies on,

6    that I have the authority to tinker with or narrow a class

7    definition that is too broad once the actual evidence is put

8    forth as to why the definition is too broad or why the class

9    may not be ascertainable, and I think it was in the *Gregory*

10    decision, if I'm not mistaken, that the Court made that

11    observation.  But it was certainly in one of the cases that

12    you cited, either *Calabrese* or *Gregory*.  Why isn't that --

13          MR. COHEN:  I believe it was in *Gregory*, Your Honor.

14          THE COURT:  Okay.

15          So why isn't that the correct approach?  I mean,

16    this would seem to me premature and certainly something that

17    would be unwise, because if, in fact, the class is

18    ascertainable, I've basically precluded any kind of effort to

19    certify it.  I just am not convinced by your argument because

20    I don't have any basis upon which to find what you need me to

21    find; that it's somehow not going to be ascertainable; that

22    there isn't a way to determine without having to depose every

23    single person, as you posit, or go through any lengthy

24    investigation or court processes to see if someone -- an

25    employee -- falls within the definition.  It's hard for me --

*Proceedings*                                                    10

1    it's quite the opposite, as I said, especially when we are

2    talking about a relatively small operation.

3           Now, you mentioned the numerosity question, and I

4    think that might be an issue, although the nine-employee

5    figure is, as you say, during a time of pandemic, so I don't

6    know, but I assume that the number of employees was higher

7    before the pandemic took hold.

8           But, again, I think -- you haven't really satisfied

9    me that this is a proper consideration at this time.  There's

10   nothing inherently difficult, it would seem to me, or

11   unascertainable, based on the definition.  It may be that, at

12   the end of the day, it cannot be easily ascertained without

13   having to do extensive individualized examinations of the

14   proposed class members or the punitive class members, but I

15   don't have any basis right now to make that finding.  That's

16   what I would say.

17          So let me turn now to the plaintiff to respond.

18          You don't need to respond on the class argument.  I

19   think I've resolved that for myself based on what I just said.

20   But go ahead and make whatever arguments you want, Mr. Romero,

21   about the viability of a private right of action for a 191

22   violation.

23          MR. ROMERO:  Sure, Your Honor.  Thank you.

24          The authorities on which the defendants rely -- and

25   I realize that at a deference to you, they refer to the --

1          THE COURT:  I won't be insulted.  Go ahead.

2          MR. ROMERO:  They refer to the *Coley* case several

3    times, but, you know, to put that decision in context, Your

4    Honor, it was in the context of a default judgment; and having

5    looked at the underlying papers that had been submitted prior

6    to that decision in the case --

7          THE COURT:  Let me interrupt you.  Hang on.  Let me

8    interrupt you, only because I remember that case very, very

9    well, and I took a look at the decision again before today, so

10   you don't need to remind me of the context; I'm absolutely

11   familiar with that.

12          What I do want to know a little bit more is the main

13   argument that the defense can make -- and I'm not feeling

14   bound by *Coley*, so let me just say that.  My view of *Coley*

15   was -- it was a decision I rendered under the circumstances

16   that everybody is familiar with from the decision itself;

17   namely, a default judgment and where there was a FLSA failure

18   to timely pay claim made that resulted in liquidated damages,

19   so that is marginally relevant in my mind.  More relevant is

20   the timing of it.  I issued that decision in 2018, and since

21   then, there has been this First Department case, *Vega vs. CM &*

22   *Associates Construction Management, LLC*, which you properly

23   rely on.  It's a September 2019 decision -- again, by the

24   First Department -- which directly addresses the question

25   presented here; namely, is there a private right of action for

*Proceedings*                                                                    12

1    liquidated damages under New York Labor Law Section 191 based

2    on this frequency payment issue, i.e., the failure to pay

3    manual laborers on a weekly basis.

4              So, to me, that's the strongest argument; and the

5    only question is whether or not the courts in the *Finkelstein*

6    cases -- the two of them -- properly decided that a Second

7    Department decision -- this *Ikea* case -- indicates the Court

8    of Appeals would not follow the First Department decision in

9    *Vega*, or that the other two cases out of Queens Supreme Court

10   should be some kind of guidance as to what the proper rule is.

11             MR. ROMERO:  Sure.  So -- yes, Your Honor, timing is

12   everything.  The *Coley* was decided prior to *Vega* and prior to

13   *Scott*, as well as all the other authorities, or most of the

14   other authorities cited in the defendants' motion were decided

15   before those two cases.  As Your Honor noted, the -- and we

16   pointed out in our letter brief, the only appellate division

17   case in New York to directly address the issue of whether or

18   not there's standing -- a private right of action under labor

19   law 191 is the *Vega* case.  The two companion cases that were

20   decided by the same judge in *Kruty* and *Phillips vs.*

21   *Finkelstein* in Supreme Suffolk did not seem to care for the

22   result in *Vega* but did not indicate in any way why *Vega* was

23   wrongly decided.  *Vega*, you know, was very cogent, as is *Scott*

24   *vs. Whole Foods*; they lay out the rationale why there should

25   be a private right of action under 191.  The Court in Suffolk

1   County didn't say why *Vega* or *Scott* were wrongly decided; they

2   simply referred to this *Ikea* case cited by the Appellate

3   Division, Second Department, that did not directly address the

4   issue of whether or not there's a private right of action

5   under 191.

6          So I think there's two bases not to follow the

7   decision in Supreme Suffolk:  One, there's no cogent

8   explanation as to why *Vega* and *Scott* are wrong; and, two, they

9   rely on an appellate division case that didn't decide what

10  they say it decided.

11         THE COURT:  Well, ironically, actually, I will say

12  in *Kruty* -- one of the companion cases -- they do cite *Coley;*

13  and the other cases that I relied on in *Coley* -- which is

14  spelled C-O-L-E-Y -- *Belizaire*, B-E-L-I-Z-A-I-R-E, and

15  *Hussain*, H-U-S-S-A-I-N; so if you are looking for a,

16  quote/unquote, reason, I think that that is perhaps the reason

17  they say it's proper to reject *Vega* because, in fact, there

18  are federal court decisions -- mine among them -- that rule

19  otherwise.

20         But I agree with you that the holding in *Kruty* and

21  the other *Finkelstein* case seems to be based on the notion

22  that you're not bound to follow appellate authority if you

23  have reason to believe that the Court of Appeals will not

24  endorse that view and that the judge in Suffolk County thought

25  that *Ikea* provided that indication; namely, that *Vega* got it

1   wrong.  That's at least how I read the *Finkelstein* decisions.

2           And so I understand that you're saying that that

3   might explain why they don't follow *Vega*, but I think you go a

4   step further to say that they don't explain why *Vega* is wrong

5   on the merits or the substance of it.

6           MR. ROMERO:  I guess that's what I meant to be -- to

7   state it a little bit more articulately than I did previously.

8   In -- (Teleconference interruption.) -- explain why the

9   rationale in *Vega* or Scott are wrong.

10          THE COURT:  Right.

11          MR. ROMERO:  And to the extent that -- to the extent

12  that the supreme Suffolk case relies on the federal cases that

13  have been cited prior to *Vega* and Scott, that's simply not

14  logical.

15          THE COURT:  All right.

16          So, folks, I am prepared to rule at this time.  I

17  don't find these issues require a written decision; the case

18  law is somewhat limited and the issues are relatively

19  straightforward.

20          As I've forecast, I'm not going to dismiss the class

21  allegations.  I think to do so would be premature at best.  As

22  I said earlier, I don't have any basis upon which to decide at

23  this time that determining who meets the class definition set

24  forth by plaintiff would require individualized

25  determinations, thereby making the class unascertainable or

1   requiring mini hearings to do so.  That question will likely

2   come up -- or could come up again -- at the point that

3   plaintiff seeks to have the class certified, but at that

4   point, I will actually have some record evidence upon which to

5   rule on that argument if that argument is raised again, so I'm

6   not going to dismiss the class allegations.

7           Regarding the New York Labor Law claim -- and I'm

8   going to assume here, especially based on what Mr. Cohen

9   said -- that there is no companion Fair Labor Standard Act

10  frequency payment claim -- to use the shorthand -- because of

11  perhaps a deficiency in the enterprise aspect or element in

12  this case, given what appears to be a relatively small

13  employer.  Be that as it may, right now, what I have in front

14  of me is a case that alleges ADA -- an ADA claim -- as well as

15  this New York Labor Law claim but does not allege a FLSA

16  claim, which doesn't matter, because obviously I just need to

17  decide whether or not there is a private right of action for a

18  frequency payment claim under Section 191.

19          As I said before, though I found in *Coley*, or at

20  least -- I'm not going to say it's dicta exactly, because I

21  did say and cited cases that had found that there wasn't such

22  a claim for liquidated damages under New York Labor Law for

23  the failure to observe the weekly payment requirement of

24  New York Labor Law under 191, so I would say that it's dicta

25  only in the sense that that ruling did not affect the outcome

1   or wasn't dispositive of the outcome; namely, the assessment

2   of liquidated damages because of the FLSA claim that permitted

3   me to award liquidated damages based on the failure to timely

4   pay.

5           I do want to correct one statement you said,

6   Mr. Cohen, which is that although I did say that two weeks

7   defined, in some sense, a reasonable payment schedule, that

8   was for purposes of the Fair Labor Standard Act claim.

9   New York Labor Law, as everyone knows, specifically requires,

10  as a matter of statutory law, payment on a weekly basis for

11  manual laborers, so the finding that I made about a two-week

12  payment schedule is irrelevant to the New York Labor Law claim

13  here.

14          But as I eluded to earlier, I am revisiting my *Coley*

15  decision in light of the *Vega* decision, which is out of the

16  First Department and squarely addresses the issue raised here,

17  and does find, very emphatically, that there is both and

18  express and implied private right of action that allows an

19  employee to get liquidated damages for failure to timely pay,

20  for failure to meet the one-week payment schedule, even where

21  the plaintiff is not alleging that they did not receive their

22  full pay; and the *Vega* decision goes to great lengths to

23  explain that underpayment includes the failure to pay under

24  the terms provided for.  And if the terms, as required by

25  statute, are a weekly payment, then that would qualify as

1   underpayment if the employer fails to meet that weekly payment

2   requirement.

3              I will say, candidly, I find the reasoning in *Vega* a

4   little bit -- it's going to sound too harsh -- a little

5   tortured; but, nonetheless, it is an appellate decision on an

6   issue of New York statutory law interpretation, and as the

7   *Finkelstein* cases acknowledged, as a general matter, I, as

8   well as the state courts, are bound to follow appellate court

9   decisions unless I'm convinced -- or unless there is

10  substantial evidence or reason to believe that the Court of

11  Appeals would find otherwise; and so, therefore, I have

12  considered that issue, and I have considered the *Finkelstein*

13  decisions that reached the conclusion that *Vega* doesn't need

14  to be followed because of the *Ikea* decision out of the Second

15  Department -- that reasoning from the *Finkelstein* decisions I

16  disagree with -- and I agree with the plaintiff that *Ikea*

17  didn't address that issue, and I think it's quite difficult to

18  read into *Ikea* any ruling at all on this precise issue,

19  whether there is a private right of action under 191.

20             The other decision that I think is useful, or

21  helpful, on this issue is Judge Feuerstein's decision in the

22  *Scott* case, which the plaintiff also relies on, and that was

23  issued in April 2019 -- interestingly, before the *Vega*

24  decision -- but in some ways it presages, I think, the

25  relevant question, which is what would the New York Court of

*Proceedings*                                                                18

 1    Appeals decide on this issue.  And in it, Judge Feuerstein, I
 2    think very helpfully, discusses two Court of Appeals'
 3    decisions in which 191 actions were the subject of the case,
 4    though not the precise issue, about a private right of action,
 5    but she notes -- and I think it's relevant here -- the Court
 6    of Appeals, while ruling on the other issue presented in those
 7    cases, did not suggest in any way that the private actions
 8    brought under 191 were improper in any way and did not decide
 9    that those actions should not have been pursued or allowed to
10    be pursued, I should say, and were not viable, and she found
11    that to be some indication to support the view that there is a
12    private right of action under 191.
13            So I think that that's actually quite helpful in
14    terms of predicting, as I must, how the Court of Appeals might
15    rule, even though, as I said before, she issued her
16    decision -- Judge Feuerstein -- issued her decision even
17    before the *Vega* decision, but made the -- or found very
18    clearly that there is a private right of action.
19            So for all those reasons, basically, because *Coley*
20    was rendered at a time when I didn't have the benefit of
21    either *Vega* or *Scott*, I am not following my prior decision; I
22    am not dismissing the 191 action.  This issue, too, may arise
23    at a later point in the litigation and certainly may be the
24    subject of further briefing should there be more guidance
25    coming out of the state court at the appellate or higher level

1   about this precise issue, but at this time, I am not going to

2   dismiss the New York Labor Law Section 191 frequency payment

3   claim.

4            So in toto I've denied the motion to dismiss; the

5   case will proceed to discovery.

6            And I will make another note.  Part of my more

7   practical thinking on it as well is that granting dismissal

8   obviously has permanent consequences -- or at least permanent

9   until there's an appeal -- consequences for plaintiff's case;

10  whereas, denying the motion, as I said before, doesn't

11  foreclose the possibility that the issue could be raised at a

12  later time when it's more appropriate -- for example, on the

13  class certifications issues -- and, as I mentioned, maybe when

14  there's more guidance from the state court about this New York

15  Labor Law claim.

16           At the same time, it doesn't -- when I say "it,"

17  letting these claims go forward -- doesn't substantially

18  expand discovery or create what may turn out to be an

19  unnecessary burden.  So for those practical reasons as well,

20  I'm not going to dismiss these claims, and I'm going to let

21  them go forward.

22           Let's see.  Have you folks had your initial

23  conference yet with Magistrate Pollak?

24           MR. ROMERO:  Peter Romero, Your Honor.

25           No, the parties have not.

*Proceedings* 20

1    THE COURT:  So once we docket this decision, which

2  will be later today, Judge Pollak will presumably convene an

3  initial conference.  I will certainly let her know that the

4  case is going forward so she can go ahead and issue a

5  scheduling order for that to happen.

6        Is there anything else from the plaintiff that I

7  need to address at this time?

8        MR. ROMERO:  Not from our perspective, no, Your

9  Honor.

10        Thank you.

11        THE COURT:  Okay.  Thank you.

12        From you, Mr. Cohen, for the defense?

13        MR. COHEN:  Nothing further, Your Honor.

14        Thank you.

15        THE COURT:  Okay.  All right.

16        Well, thank you, everyone, and please stay safe.

17        MR. ROMERO:  Thank you.  You too, Your Honor.

18        MR. COHEN:  Thank you, Your Honor.

19        (Matter concluded.)

20

21                *    *    *    *    *

22  I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

23

24     /s/ Denise Parisi              July 6, 2020

25  _____     _____
        DENISE PARISI                      DATE